# Matthews v. General Steel Castings Corp. No. 2

*John V. Diggins*, for claimant.

*Malcolm B. Petrikin*, for defendant.

SWENEY, J., November 9, 1944. — This workmen's compensation case comes before us for the second time. Much as we regret the delay in the final disposition of these proceedings, we are of opinion that the record must be remitted to the board for further hearing and determination.

The facts of the case were set forth in our opinion dated January 6, 1944, in which we ordered that the record be remitted to the board for more specific findings of fact. It is sufficient, for present purposes, to recite that claimant was severely burned as a result of about nine hours' exposure to radium rays on June 3 and 4, 1942, while he was in the employ of defendant, General Steel Castings Corporation, as a maintenance machinist. The radium was contained in a capsule,

and was used at the employer's plant to take X-ray pictures of iron castings. The radium capsule had been lost or mislaid and was found either by claimant or one Conroy, a fellow-employe. In any event, claimant came into possession of the capsule, and carried it in the left pocket of his overalls for about 7½ hours on June 3rd, and about 1½ hours on June 4th. He turned the capsule in at the plant office at about 9:30 a.m., on June 4th. The burn subsequently developed on that part of claimant's left leg which came into contact with the radium capsule as it lay in the overalls pocket. The duties of claimant's employment did not require him to use or to come into contact with radium.

The referee found "that claimant's condition was due to an accidental injury, namely, a radium burn, suffered in the course of his employment with defendant, caused by his close exposure to the radium over a period of nine hours or more", and awarded compensation for total disability.

On appeal to the board, that body made an additional finding of fact, modified the referee's second conclusion of law, and, with those changes, affirmed the findings of fact, conclusions of law, and award of the referee.

Defendant then filed its appeal and exceptions in this court. In our opinion of January 6, 1944, we stated:

"There can be no doubt that claimant was totally disabled for a considerable period of time, and that the disability was the direct consequence of the exposure to the radium."

But we also pointed out, and we are still of the same opinion, that in the determination of the question whether the exposure to the radium constituted an "accident" the all-important consideration was claimant's knowledge of the true nature of the object which he carried in his overalls pocket. Neither the referee nor the board had made any specific and formal finding on this vital question, although in both the referee's adjudication and the board's opinion the discussion of

the case assumed that claimant had no knowledge that the capsule contained radium. It was for that reason that we remitted the record for more specific findings of fact. We said in our opinion:

"Nevertheless, the compensation authorities made no distinct finding of fact on the material point of claimant's knowledge of the nature of the object when he placed it in his pocket."

Now, we did not mean to imply that claimant's knowledge of the nature of the object *during the exposure* was unimportant. It is obvious that if claimant learned the true nature of the object sometime *during the exposure* his continued exposure, *with such knowledge*, could not be accidental. We thought we made that abundantly clear when we said:

"If there is a finding that the claimant had no knowledge as to the nature of the capsule until he was informed, on the morning of June 4, 1942, by a fellow-employe that it contained radium, it would follow necessarily that there had been an accident in contemplation of the statute. But, if it is found as a fact that the claimant *knew* that the object contained radium at some point of time during the exposure and continued to expose himself, then the question arises as to whether the injury was caused by an accidental exposure or by a voluntary exposure. . . ." (Emphasis as in the opinion.)

To digress for a moment, the reason for that part of the opinion quoted immediately above was the fact that our review of the testimony had disclosed that the witness Conroy had testified to a conversation between himself and claimant *on the afternoon* of June 3rd at about the time that Conroy, in turn, had been conversing with the "electrician" about some lost radium. It seemed to us, when we wrote the opinion, that this testimony of Conroy might have a bearing on the question when claimant first came by the knowledge that the capsule contained radium. Claimant, in his testi-

mony, made no mention of any conversation between himself and Conroy on the afternoon of June 3rd. He was not asked about it, so far as our review of the testimony discloses. We think this is a matter that could very well deserve inquiry at a further hearing.

We also said in our opinion that, inasmuch as the record must be remitted for a finding of fact on the question of claimant's knowledge of the true nature of the capsule, there should be a specific finding as to claimant's purpose in putting the capsule into his pocket. "Such a finding", we said, "bears upon the question as to whether the putting of the capsule in his pocket was 'in the course of his employment'."

On the return of the record to the board, following our opinion and order, that learned body took no additional testimony, but vacated the referee's third, fourth, and tenth findings of fact, and substituted its own corresponding findings of fact. The record was then returned to this court, and defendants again filed exceptions. The board's third finding of fact reads, in part, as follows:

"On June 3, 1942, at about 9 a.m., claimant while rigging a jib crane in the course of his employment picked up an object which he intended to use as a plumb bob. He did not know at that time the object was a capsule containing radium used to photograph castings and that it had been misplaced by other employes."

Its tenth finding of fact, in part, is as follows:

"That claimant did not know that the object which he had placed in his pocket and which he later intended to use as a plumb bob contained radium . . ."

For reasons which will be stated hereafter, we are of the opinion that these findings are not supported by legally sufficient evidence. However, it seems to us that there is still no specific finding of fact as to *when* claimant first knew that the capsule contained radium. It is true that the board, in the text of its opinion (the second one), says ". . . that the claimant did not know

what it was until advised by a co-employe that it may contain the lost radium . . ." This is an equivocal statement, however, *because claimant had a conversation with a co-employe (Conroy) on the afternoon of June 3rd, and did not turn in the radium until the morning of June 4th.* We have already referred to this conversation, and it is not necessary to repeat what has been said. The board also said in the text of its opinion: ". . . that he did not know that any radium had been lost until about 9:30 a.m. on June 4, 1942. . . ." This does not meet the issue. The question is: "When did claimant first know that the object which he placed in his overalls pocket, and which he carried in that pocket for some nine hours, was a capsule containing radium?" The issue may as well be squarely met.

We have indicated that, in our opinion, portions of the third and tenth findings of fact of the board are not supported by legally sufficient testimony. The vital questions in the case, we think, are (1) claimant's knowledge as to the true nature of the radium capsule, and when he first acquired that knowledge; and (2) his purpose in placing the radium capsule in his overalls pocket. Nevertheless, claimant gave no direct testimony on either question. Findings of fact on both of these points are left to be "guessed at" from testimony which is nothing more than a recital of conversations which claimant had with others, conversations which are supposed to reflect claimant's then-existing knowledge and intention with respect to the capsule. For example, claimant's testimony relating to the circumstances in which he came into possession of the capsule is as follows:

"A. I came down, and Conroy saw I had it in my hand, he looked at it and said 'what you got there?' I said 'I don't know'. He said 'what you going to do with it?' 'Throw it away' I said. 'Let me have it, I will put it in my pocket and keep it for a plumb bob'. I reached out and took it off of Conroy and put it in my pocket."

It is very evident that, here, claimant did not testify that he did not know what the object was. He testified that he told Conroy that he did not know what it was. What claimant told Conroy concerning his knowledge of the object, or his intention with respect to it, is utterly immaterial. He may or may not have told Conroy his actual belief and intention.

Again, claimant's account of his conversation with the employer's officials shortly after he turned the capsule in on June 4th is as follows:

"A. That's the one I am referring to now, they asked me where I got the radium, I told them I got it from Conroy, took it off Conroy, I didn't know what it was, I told him I would keep it for a plumb bob, they turned around and questioned me as to what I intended to do with it, I told them I intended to use it as a plumb bob, they asked me if I had taken it home, and I said no that it was in my overalls pocket in my locker, then they turned around and asked me if I had any signs of a burn, and I said 'what do you mean?' "

We have been unable to find any testimony in the record in which claimant directly states that he did not know what the object was, or that he intended to use it as a plumb bob. We recognize, of course, that the rules of evidence are not applied in compensation cases with the same strictness as in common-law actions. Nevertheless, we know of no appellate court decision which sanctions the finding of a vital fact on such testimony as this record presents. We cannot do otherwise than to sustain defendant's exceptions, and remit the record for further hearing.

Some other matters require brief mention. In our former opinion, we pointed out that the referee's third finding of fact was to the effect that claimant was exposed to the radium rays for a period of at least nine hours on June 3, 1942. We think it is agreed on all sides that the nine hours' exposure included parts of both June 3rd and June 4th. The error still seems to

persist. In its third finding of fact, the board said in part:

"The claimant placed the object in a pocket of the overalls he was then wearing at about 9 a.m. on June 3, 1942, and in this manner was exposed to the radium for about nine hours on June 3, 1942."

But in the text of its opinion the board states: ". . . that the claimant had the capsule in his pocket from about 9 a.m. on June 3, 1942, until he quit work at about 4:30 p.m., and on June 4, 1942, from about 8 a.m. until 9:30 a.m." The matter should be corrected.

We also desire to call attention to an apparent inconsistency in claimant's testimony. In his direct examination, claimant's explanation of the circumstances attending his coming into possession of the capsule was that he "picked up long thing looked like a top". Still later in his direct examination, he testified that he told the employer's officials when he turned the capsule in, on the morning of June 4th, that he had found it "up in the shop in the scrap pile". On cross-examination, however, claimant testified:

"Q. Working with you were Elwood Shores and Joe Conroy; you say Conroy picked up this object?

A. I didn't say he picked it up.

Q. What did you say?

A. Conroy had it.

Q. *When did you first see it?*

A. *When he came down off the jib crane he had it in his hand.*

Q. You saw him have it in his hand?

A. He came down off the column.

Q. Conroy was holding this object in his hand?

A. He had it in his hand."

If claimant first saw the object when it was in Conroy's hand as Conroy came down off the jib crane, it would seem fairly obvious that claimant did not find it "in the scrap pile". On another hearing, this apparent contradiction should be explained.

We repeat what we said in our former opinion in this case—that if any part of claimant's nine hours' exposure to the radium was with knowledge on his part that the capsule contained radium, then his injuries were not, in whole, the result of an accident. Our compensation laws do not provide compensation for all injuries, but only for those "by an accident". Medical testimony would be necessary, in the contingency stated, to apportion the injuries as between the accidental exposure and the voluntary exposure.

One final word seems appropriate. It is no part of our function to find facts, or to weigh evidence. This duty has been assigned to the compensation authorities, who have the opportunity to see and to hear the witnesses, and to judge of their credibility. Nothing in this opinion, therefore, is to be construed as an expression of opinion, on our part, as to the merits of the case, or the facts that should be found.

### Order

And now, November 9, 1944, defendant's appeal in the foregoing matter coming on to be heard by the court en banc, after due consideration thereof, the court doth order, adjudge, and decree:

1. That defendant's exceptions to the findings of fact of the referee and the Workmen's Compensation Board be, and the same are, hereby sustained; the award of compensation is reversed; and the record is remitted to the board for further hearing and determination, in accordance with law.

2. Claimant is allowed an exception to the action of the court here taken.